**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| **TARIQ WYATT,** | : | |
|         **Plaintiff,** | : | |
| | : | **Civil Action** |
|     v. | : | **No. 16-3778** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
|         **Defendants.** | : | |

**ORDER**

AND NOW, this _____ day of _____, 2020, upon consideration of Defendant City of Philadelphia's Motion to Dismiss for Failure to Prosecute and Motion for Summary Judgment, it is **HEREBY ORDERED** that the Motion is **GRANTED** and Plaintiff's claims against Defendant City of Philadelphia are hereby **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **TARIQ WYATT,** : | |
|     **Plaintiff,** : | |
| : | **Civil Action** |
| v. : | **No. 16-3778** |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
|     **Defendants.** : | |

## DEFENDANT CITY OF PHILADELPHIA'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE AND MOTION FOR SUMMARY JUDGMENT

Defendant, the City of Philadelphia (the "City"), by and through the undersigned counsel, hereby files this Motion to Dismiss Plaintiff's lawsuit for Failure to Prosecute and Motion for Summary Judgment. In support thereof, the City incorporates the attached Memorandum of Law. The City respectfully requests that this Court grant this Motion, and dismiss Plaintiff's claims against the City with prejudice.

Date: March 17, 2020

Respectfully submitted,

*/s/ Jonathan Cooper*
Jonathan Cooper
Deputy City Solicitor
Pa. Attorney ID No. 316374
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5448 (phone)
jonathan.cooper@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TARIQ WYATT,** : | |
| **Plaintiff,** : | |
| : | **Civil Action** |
| v. : | **No. 16-3778** |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
| **Defendants.** : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF PHILADELPHIA'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE AND MOTION FOR SUMMARY JUDGMENT**

Plaintiff Tariq Wyatt ("Plaintiff" or "Wyatt") asserts claims against the City of Philadelphia (the "City") for allegedly denying his access to the courts by refusing to identify – and accept service on behalf of – two Philadelphia correctional officers with the purported last names "Johnson" and "Byrne."  Prior to bringing this claim against the City under this docket number, Plaintiff attempted to sue the alleged correctional officers "Johnson" and "Byrne" under a separate docket number in connection with a January 2013 incident at the Philadelphia Industrial Correctional Center ("PICC"), during which Plaintiff got in a fight with another inmate named Charles Williams.  The record indicates that during that fight, Plaintiff suffered a cut above his eye at the hands of Inmate Williams, for which Plaintiff blames those same two correctional officers.  Discovery in this matter, however, has made abundantly clear that the alleged "Johnson" and "Byrne" *do not exist* and/or that Plaintiff, despite his averments to the contrary, is *completely mistaken* about the names of the officers who he intended to sue.

Plaintiff has demanded a jury trial since the onset of this litigation.  And in accordance with Plaintiff's desire to present his case to eight of his fellow citizens, the

Court held a final pretrial conference in this matter on March 10, 2020, in which the Court attempted to discuss the issues that would be presented to the jury. The Court also considered Plaintiff's request to not attend his own jury trial in person and instead attend remotely. But when the Court attempted to explain to Plaintiff that the mechanics of jury selection would be impossible unless he were brought down to attend trial – which the Court offered to arrange, as is customary, and to which the City had no objection – Plaintiff threw what can only be described as a tantrum and launched into a diatribe against the City, the undersigned counsel, and most of all, the Honorable Judge Sanchez presiding over this matter. And most importantly, during his outburst, Plaintiff expressly stated in open court – multiple times – that he *refused to attend his own jury trial in this case*, apparently because he (like every incarcerated party) would have to be brought down to Court to do so, which was at odds with Plaintiff's stated desire to try the case from the comfort of his current facility, SCI-Frackville.

For the reasons set forth below, Plaintiff's claims against the City must be dismissed with prejudice for failure to prosecute and/or because there exists no genuine issue of material fact as to his claims against the City.

I. **FACTS**

A. **Background of Lawsuit / Brief History of Proceedings**

On March 19, 2014, Plaintiff sued two individuals with the last names "Byrne" and "Johnson" who he claimed were PICC correctional officers who allowed him to get beat up by another inmate named Charles Williams ("Inmate Williams"). *See generally* Civ. No. 14-1205, Pl. Cmplt. (Doc. No. 5). In his original Complaint, Plaintiff alleges he was assaulted by Inmate Williams while both men were incarcerated at the Philadelphia

Industrial Correctional Center ("PICC") in 2013.  *See id.* at 3.  Specifically, Plaintiff's Complaint avers that at an unspecified time and date, he was placed in a cell with Inmate Williams, during which time Inmate Williams challenged Plaintiff to fights, eventually causing Plaintiff to report the situation to the individuals Plaintiff identifies as PICC correctional officer "Johnson" and PICC correctional sergeant "Byrne," to request that he and Williams be separated.  *See id.* at 3-5.  Plaintiff alleges that eventually, Williams punched him in the face, causing a cut over his right eye.  *See id.*[1]  For the avoidance of doubt, this entire lawsuit is based on that single cut above Plaintiff's eye, which occurred over seven years ago.

Following the filing of his Complaint, Plaintiff – with the assistance of the Court and the U.S. Marshal's Service – attempted to serve his Complaint on the unspecified correctional officers "Byrne" and "Johnson."  *See Wyatt v. Johnson, et al.,* Civ. No. 14-1205 (Doc. Nos. 7; 10).  However, the City did *not* accept service for either of those correctional officers because their last names, standing alone – without any other identifying information – were insufficient for the City or the Philadelphia Department of Prisons ("PDP") to sufficiently identify them.  *See id.*  Plaintiff – apparently frustrated that the City could not identify the officers at issue – then filed a new complaint under a different docket number against the City, in which he alleged that the refusal to identify

---

[1] Plaintiff's Complaint generically alleges that all these events occurred between January and March 2013, but at a July 13, 2018 oral argument before this Court, Plaintiff indicated uncertainty regarding the dates and extended the possible timeframe through May 2013.  Since that time, based on documents provided by the City, Plaintiff has expanded the temporal focus of his lawsuit through May 17, 2013, the date of his transfer from PDP custody to a Commonwealth facility.  *See, e.g.,* Doc. No. 35, Letter from T. Wyatt dated Dec. 19, 2019, at 6 of 9; *see also* <u>Exhibit A</u>, Plaintiff Housing Summary.  The nexus between May 17, 2013 and Plaintiff's January 26, 2013 injury remains entirely unclear, but Plaintiff has nonetheless insisted on receiving discovery pertaining to his May 17, 2013 transfer.  The City has complied with those discovery requests.

the appropriate individuals violated his constitutional rights. *See Wyatt v. City*, Civ. No. 16-3778 (Doc. No. 3).[2] That claim, having been construed by the Court and the parties as a claim for Denial of Access to the Courts (Doc. No. 21), is the subject of the instant lawsuit, and instant Motion.

## B. **Plaintiff's Repeated Failures to Identify the Officers He Attempted to Sue**

Since the initiation of the action under this docket number, Plaintiff has insisted that the City is concealing the identities of the "Johnson" and "Byrne" correctional officers who, allegedly, allowed another inmate to beat him up, resulting in the cut above Plaintiff's eye. In connection therewith, this Court required that the City take numerous steps to attempt to identify the two officers at issue. (Doc. Nos. 9, 14, 22). As the Court has noted, the City has complied with all such Orders (Doc. No. 45).

Notably, Plaintiff – despite having the burden to prosecute the instant lawsuit – has offered no help whatsoever in identifying those officers. To date, Plaintiff has never even suggested a first name, badge number, payroll number, or any other identifying information about either one of these officers that could be used to determine their identities. With respect to their position/job title on the date(s) of the alleged incident(s), Plaintiff has averred throughout this litigation that the unidentified Officer Johnson was one of "K-units regular officers" and that the unidentified "Sergeant Byrne" was "walking through K-Unit" at some point during the time period when the alleged incident(s) occurred. *See* Pl. Cmplt., at 3-4; 6, Civ. No. 16-3778 (Doc. No. 3). In a purported attempt to support these assertions, Plaintiff has demanded from the City – and received – a very large collection of materials including prison rosters, photographs, log

---

[2] Unless otherwise indicated, all docket entries numerically referenced herein refer to the current docket number, Civ. No. 16-3778.

books, and various other prison records.[3] These materials consist of hundreds, if not thousands, of pages of information that collectively identify *all* of the PICC correctional staff who worked at and/or were on duty at PICC at all relevant times and locations (based on *both* the objective evidence as to the date of Plaintiff's injury *and* Plaintiff's own allegations). In short, if the individuals Plaintiff attempted to sue were in fact employed by PICC between December 2012 and May 2013, Plaintiff has received *more* than sufficient information – including most importantly their names, positions, and photographs – to confirm their identities.

But despite this extensive document production, Plaintiff is no better able to identify the individuals who allegedly violated his rights than he was on the day he initiated this lawsuit. Indeed, the City's painstaking steps have yielded the following results (and/or lack thereof, as noted below):

- At the time he filed this lawsuit, Plaintiff was unclear about when the incident (i.e. the fight between him and Inmate Williams) had occurred, and thus

---

[3] The City has sent Plaintiff (with a copy to the Court) six different letters – some of them quite lengthy – detailing its efforts to locate the mystery Officer "Johnson" and Sergeant "Byrne." Along with those letters, the City has sent Plaintiff the following materials: Plaintiff Housing Summary (Exhibit A); January 26, 2013 Misconduct Report (Exhibit B); PICC Rosters for all shifts during potentially pertinent dates during December 2012 *and* January 2013 (Exhibits C and E); a comprehensive PDP Alpha Roster dated October 27, 2012 (Exhibit D); photographs of all PICC correctional officers with the last name "Johnson" or any last name starting with "B" during the dates that Plaintiff contends his rights were being violated (Exhibit F); PICC K-Unit Logbook dated January 26, 2013 (Exhibit G); PICC Receiving Room Logbook dated January 26, 2013 (Exhibit H); PICC J-Unit Logbook dated May 15, 2013 – May 17, 2013 (Exhibit I); PICC Receiving Room Logbook dated May 17, 2013 (Exhibit J); Declaration of Correctional Officer Eric Davis (Exhibit K); and Plaintiff's Prison Medical File.

Nearly all of these materials have – in substantial and pertinent part – been docketed in this matter in the City's Response in Opposition to Plaintiff's Motion for Default (Doc. No. 41).

provided a three-month range during which time the events giving rise to this claim *may* have occurred. *See* Pl. Initial Cmplt., Civ. No. 14-1205 (Doc. No. 5).

- With respect to the period of incarceration at issue in this lawsuit, Plaintiff was housed at PICC from December 14, 2012 – May 17, 2013. *See* Exhibit A, Plaintiff Housing Summary. Specifically, Plaintiff was housed on K-Unit from December 14, 2012 – January 6, 2013, from January 16, 2013 – January 27, 2013, and finally from January 31, 2013 – May 15, 2013. *See id.*

- The City produced the misconduct report for the altercation between Plaintiff and Inmate Williams, demonstrating that it occurred on January 26, 2013. *See* Exhibit B, January 26, 2013 Misconduct Report. Although Plaintiff was apparently unaware that this was the date of the incident, he has never disputed it.

- The City has provided Plaintiff with PICC daily rosters for all correctional officer shifts (7am – 3pm; 3pm – 11pm; 11pm – 7am) from December 10, 2012 – January 31, 2013, *none of which reference anyone with the last name "Byrne." See* Exhibits C and E, PICC Daily Rosters.[4]

---

[4] The City also produced a comprehensive roster of *all* PICC employees with the last name "Johnson" and/or who had any last name starting with the letter "B", dated as of October 27, 2012. *See* Exhibit D, PDP Alpha Roster 10/27/12. That roster – although it reflects the employee list as it stood just *before* Plaintiff arrived at PICC – substantially confirms that the employee names on the daily rosters are an accurate reflection of the PICC correctional staff between December 2012 and January 2013, not to mention beyond that. More specifically, and as noted in the City's previous letters to Plaintiff and to the Court, after undertaking a thorough review of all daily rosters and the comprehensive October 17, 2012 roster, the only individuals listed on the daily rosters (Exhibits C and E) who are *not* listed on the October 27, 2012 roster (Exhibit D) include D. Bazemore, S. Bolden and T. Brockenbrough. Not only were photographs of these three individuals provided to Plaintiff along with all of the other "B" names and "Johnsons" listed in the daily rosters (*see* Exhibit F), but the substantial degree of overlap between the PDP Alpha Roster (Exhibit D) and the daily rosters (Exhibits C and E) demonstrate the accuracy of PDP's record-keeping with respect to its PICC employees.

- The daily rosters reference a "W. Johnson" (William Johnson), who frequently worked on Plaintiff's housing unit – K-Unit – during December 2012 and January 2013. Plaintiff, however, has been provided with a photograph of that individual (along with all other PICC correctional officers with the last name "Johnson") and has explicitly stated before the Court in multiple hearings in this matter that he is ***not*** the "Johnson" who Plaintiff is intending to sue. *See* Exhibits C and E; *see also* Exhibit F, Photographs of Correctional Officers.[5] Plaintiff has also made this same representation in writing. *See, e.g.,* Pl. Affidavit (Doc. No. 23).

- PDP records demonstrate that there was no "Sergeant Byrne" who worked at PICC during the relevant time periods. Because Plaintiff has refused to accept this, the City has taken drastic steps to demonstrate this fact, which include going as far as providing Plaintiff with color photographs of *every correctional officer* who worked at PICC between January 2013 – May 2013 *with the last name "Johnson" or any last name starting with the letter "B,"* so as to allow Plaintiff discretion to correct the names he set forth in his Complaint(s) in case he was mistaken. *See* Exhibit F, Correctional Officer Photographs. Plaintiff, however, has reviewed those photographs on numerous occasions

---

[5] Photographs of each individual with the last name "Johnson" whose name shows up on the daily rosters have been shown to Plaintiff and Plaintiff has denied throughout this litigation that any of those individuals is the "Johnson" he is attempting to sue. *See* Exhibit F. The daily rosters for January 2013 reflect the fact that 6 individuals with the last name "Johnson" were stationed as PICC correctional staff during December 2012 – January 2013 (D. Johnson, J. Johnson, N. Johnson, C. Johnson, S. Johnson and W. Johnson). At oral argument on July 13, 2018, Plaintiff reviewed photographs of four (4) of these individuals – J. (John) Johnson, W. (William) Johnson, C. (Craig) Johnson and D. (Dwayne) Johnson – and stated that none of them was the person he was attempting to sue. In the days that followed, counsel sent Plaintiff a letter including photographs of the other two Johnsons – S. (Shawn) Johnson and N. (Natasha) Johnson – but Plaintiff, this time by letter, again stated that neither of these individuals was the proper defendant. (Doc. No. 23). Therefore, Plaintiff is clearly mistaken for one reason or another, or is not being forthright with the Court and with counsel.

and has expressly stated that none of those individuals are the person(s) responsible for allegedly violating his rights who he attempted to sue in this lawsuit (i.e. none of them are the same person he identifies as Sergeant "Byrne", nor are any of them the person he identifies as Officer "Johnson."). *See, e.g.,* Pl. Affidavit (Doc. No. 23); Pl Statements in Open Court.

- The City has provided Plaintiff with the requested K-Unit Logbook and Receiving Room Logbook for January 26, 2013 (the date of the fight between Plaintiff and Inmate Williams), both of which reference Plaintiff's injury, but *neither of which reference anyone with the last name "Byrne" or "Johnson." See* Exhibit G, PICC K-Unit Logbook, Jan. 26, 2013; Exhibit H, PICC Receiving Room Logbook, Jan. 26, 2013.

- The City has likewise provided Plaintiff with the requested J-Unit Logbook and Receiving Room Logbook for May 17, 2013 – the date Plaintiff was transferred upstate – which Plaintiff has continuously stated would reference the mysterious Sergeant "Byrne." *See* Exhibit I, PICC J-Unit Logbook, May 15, 2013 – May 17, 2013; Exhibit J, PICC Receiving Room Logbook, May 17, 2013. But although these logbooks mention Plaintiff's transfer from PICC that day – as is consistent with Plaintiff's Housing Summary – there is no mention of anyone with the last name "Byrne," and Plaintiff has been provided a photograph of the only "Johnson" referenced therein, to no avail.

- At a November 6, 2019 status hearing in this matter, Plaintiff indicated before the Court that PICC correctional officer Eric Davis was present for and observed certain of the interactions between him and the unidentified correctional officers. Plaintiff requested that Officer Davis provide a statement as to his knowledge of the

identities of Officers "Byrne" and "Johnson" based on those observations. In response to Plaintiff's request, Officer Davis – who in fact remains employed by PDP in Philadelphia – *signed a declaration indicating that he has no knowledge of any correctional officer or sergeant with the last name "Byrne" who worked at PICC during that time (or any other time)*. *See* Exhibit K, Declaration of C.O. Eric Davis. Officer Davis was also partners with correctional officer William Johnson during Plaintiff's time at PICC, but has no knowledge or recollection of any interactions between Plaintiff and PICC correctional officers. *See id.* Contrary to Plaintiff's assertions, Officer Davis does not support or bolster his allegations in any way, shape, or form.

- At a November 6, 2019 hearing in this matter, Plaintiff requested his prison medical file. Plaintiff's prison medical file was sent to Plaintiff in the mail following that hearing, as Plaintiff acknowledged in Court during the March 10, 2020 final pretrial conference in this matter. The City is aware of nothing in that file – nor has Plaintiff pointed to anything – that sheds light on the identity of the mysterious "Byrne" or "Johnson."

- Finally, after Plaintiff received the above-mentioned logbooks (Exhibits G, H, I, and J) and apparently realized they do not support his claims in this matter, Plaintiff has repeatedly insisted that Sergeant "Byrne" signed a *hand-written logbook* on May 17, 2013, the date of Plaintiff's transfer to Commonwealth custody (nearly 4 months after he was allegedly beaten up by Inmate Williams). *See, e.g.,* Pl. Letter dated Jan. 29, 2020 (Doc. No. 38); Pl. Resp. to Def. Resp. in Opp. to Default Mot. (Doc. No. 47). Accordingly, Plaintiff has since demanded the production of that *hand-written "original"* logbook. At the final pretrial conference in this matter, the Court ordered the City to

verify that no such hand-written logbook for the PICC Receiving Room on May 17, 2013 exists, or, if such logbook does exist, to produce it forthwith.  ***The City can now verify that no such logbook exists – or ever existed – as evidenced by the statement of PICC Warden Michelle Farrell.***  See Exhibit L, E-Mail from Warden M. Farrell re Non-Existence of Hand-written PICC Receiving Room Logbook, dated Mar. 16, 2020.

### C. Plaintiff's Explicit Refusal to Participate in the Trial of this Matter

Finally, the parties attended a final pretrial conference before the Honorable Juan R. Sanchez on Tuesday, March 10, 2020.  At the conference, Plaintiff acknowledged receiving the above-referenced discovery from the City and the Court reminded Plaintiff that, in accordance with to the Scheduling Order, the jury trial Plaintiff himself requested in this matter would be held soon – likely the following week.   In response, Plaintiff reiterated his demand for a jury trial, but also requested that such jury trial be held *remotely so that he would not need to attend his own trial in person.*  Plaintiff then communicated his expectation that because he did not want to attend his own trial in person, that he be sent the juror list – including juror names, addresses, occupations, spouse's names, and spouse's occupations – in advance of the trial, so that he could review the personal, identifying information of all potential jurors from jail.  The Court denied this request, and explained to Plaintiff that in light of Plaintiff's demand for a jury trial and corresponding need to conduct *voir dire*, there was no practical way to hold the trial remotely, and that as such, Plaintiff – like all other litigants – must attend his trial in person (at no cost to Plaintiff because the Court would simply order him brought down from his current facility to the Eastern District of Pennsylvania for what would likely be a one-day trial).

Plaintiff – apparently upset that he would be required to attend the jury trial that he himself demanded – became visibly upset, threw a fit, and accused the Court of corruption and the City of falsifying records and fabricating evidence. More germane to the instant lawsuit, Plaintiff specifically stated that he *refused to participate in the upcoming jury trial in this case.* And when the Court attempted to ask follow-up questions, Plaintiff loudly repeated that *he had no intention of showing up for his trial, and indicated that if he was brought down, he would not participate*. The hearing then concluded, with this matter still listed in the March 16, 2020 trial pool.

## II. ARGUMENTS

### A. Plaintiff's Claims Must be Dismissed with Prejudice under Fed. R. Civ. P. 41(b) for Failure to Prosecute.

Plaintiff has not prosecuted this lawsuit as is required by the Federal Rules of Civil Procedure and the case law interpreting the same. Rule 41(b) of the Federal Rules of Civil Procedure provides that if a plaintiff fails to prosecute their lawsuit and/or fails to comply with any of the applicable federal rules or a court order, a defendant may move to dismiss the action in whole or in part, or any claim against it. The Third Circuit has identified a six-part test in order to evaluate whether a party has failed to prosecute its claim, including: (1) the extent of the *party*'s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of *dilatoriness*; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense. *See, e.g., Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (citing Fed. R. Civ. P. 41(b)).

Here, every single one of these factors favors dismissal. As set forth above, the first *Poulis* factor is satisfied because Plaintiff initiated this lawsuit without a grasp of numerous essential details that would have aided all parties in moving forward with this lawsuit (i.e. date of incident, any identifying information whatsoever as to "Johnson" and "Byrne" other than his stated belief of their last names, which is demonstrably inaccurate). Even more importantly, ***Plaintiff himself has made the choice – and explicitly stated – that he would not attend his own jury trial,*** apparently because he does not want to be brought down to Court. Plaintiff and Plaintiff alone is responsible for that decision.

As to the second *Poulis* factor – the prejudice caused by Plaintiff's history of delaying the action – there would exist substantial prejudice to the City *if* Plaintiff were to eventually succeed in identifying the proper parties/witnesses to the events at issue. Plaintiff's claims arose *more than seven years ago* and are thus already far older than any civil Defendant should have to endure (particularly under the circumstances here, where no City employee is even being accused of actually causing Plaintiff's injuries themselves). Moreover, fights among inmates are a frequent occurrence in jail, Plaintiff's injuries were quite minor, and asking correctional officers who have seen the same thing time and time again to distinguish this incident from so many others – seven years later – would make it more difficult for the City to present an adequate defense than is warranted under the circumstances.

The third *Poulis* factor is likewise met because Plaintiff has never made any affirmative attempt to prosecute this lawsuit, other than demanding documents, photographs, and other materials. And after each separate round of production, Plaintiff

– constantly unsatisfied – finds a reason to make a new request.  Plaintiff likewise continues seeking continuances (Doc. No. 35, at 4 of 9; Doc. No. 36, at 2 of 4) and now has even asked for a new Judge on grounds of bias (for which no grounds exist).  These are all delay tactics which weigh in favor of dismissal.

The fourth and sixth factors are also present as the City has produced document upon document – only for Plaintiff to respond each time by insulting the undersigned counsel and accusing the City (and the undersigned counsel) of fraud and evidence fabrication.  The fact that Plaintiff would apparently prefer to hurl insults at everyone else in the case than actually prosecute his lawsuit is a hallmark of bad faith.  Additionally, as the requested documents have been produced – and Plaintiff has continued to provide no helpful information – the sheer frivolity of Plaintiff's claims has become increasingly evident.  In order to prevail on this suit, Plaintiff must convince an eight-person jury of his peers that the City has engaged in a massive fraud and wide-ranging cover-up that would necessarily rely on the long-standing and continued fraud of correctional officers, the warden at PICC, PDP medical staff, and attorneys from the City Law Department.  *And all of this for a minor cut above Plaintiff's eye* which was undisputedly *not* caused by any PDP employee, but rather by another inmate with whom Plaintiff engaged in a fight.  This is simply not believable, and Plaintiff's chances of convincing a jury to see things his way are virtually non-existent.

Finally, the fifth factor weighs heavily in favor of dismissal because there is no alternative sanction available.  Plaintiff is incarcerated and proceeding *in forma pauperis*, making financial sanctions untenable.  As such, the only way to save the Court's time and the City's resources moving forward – and in particular given the dozens upon dozens of

hours the City has spent complying with Plaintiff's increasingly burdensome demands – is to dismiss this action with prejudice.

Accordingly, Plaintiff's lawsuit should be dismissed pursuant to Rule 41(b) because he has failed to prosecute it.

### B. **Plaintiff's Claims Must be Dismissed with Prejudice under Fed. R. Civ. P. 56 because There Exists no Genuine Issue of Material Fact as to Whether the City Violated Plaintiff's Rights**.

Plaintiff's lawsuit must also be dismissed under Federal Rule of Civil Procedure 56 because there exists no genuine issue of material fact as to whether the City employed an unconstitutional policy, practice, or custom of depriving civil plaintiffs of access to the full names of purported defendants and/or refusing to accept service on behalf of properly identified defendants.

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *See id.* All inferences must be drawn, and all doubts resolved in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir. 1985).

On motion for summary judgment, the moving party bears the initial burden of identifying these portions of the record that it believes demonstrate the absence of

material fact disputes.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party, and may not rest on mere denials.  *See id.* at 321, n.3; *First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987).

In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex*, 477 U.S. at 322-24.  The non-moving party must adduce more than a mere scintilla of evidence in its favor to defeat the moving party's summary judgment motion.  *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989).  Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." *Schwartz v. Hospital of Univ. of Pa.,* 1993 WL 153810 at *2 (E.D. Pa. May 7, 1993).  Furthermore, "[p]laintiff cannot simply reassert factually unsupported allegations in its pleadings." *Poles v. St. Joseph's Univ.,* 1995 WL 542246 at *5 (E.D. Pa. Sept. 11, 1995) (citing *Celotex*, 477 U.S. at 325).

Here, Plaintiff is unable to create any genuine issue of material fact as to the City's liability in this case because he has adduced no evidence of an unconstitutional policy, practice, or custom employed by the City against him and/or similarly situated persons.  In order to bring a § 1983 municipal liability claim under *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978), a plaintiff must present

evidence that a "policy or custom of [the City of Philadelphia] was the 'moving force' behind a violation of his [constitutional] rights." *Clark v. Regional Medical First Corectional*, 360 F. App'x 268, 269 (3d Cir. 2010).  Such policy or custom must "amount[] to deliberate indifference to the rights of people with whom [government employees] come into contact." *Carswell v. Borough of Homestead,* 381 F.3d 235, 244 (3d Cir. 2004) (citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)).  Moreover, a plaintiff attempting to prove a *Monell* claim must point to evidence demonstrating that such policy was implemented by a municipal decisionmaker, or at least that a decisionmaker was aware or should have been aware of its existence.  *See McTernan v. City of York*, 564 F.3d 636, 658-59 (3d Cir. 2009); *see also Rees v. Office of Children and Youth*, 473 F. App'x 139, 143 (3d Cir. 2012) (holding that a plaintiff cannot support a *Monell* claim if they "fail[] to link the alleged offending policies or customs to anyone within [a municipality] who had policy-making authority").

Here, Plaintiff has adduced no such evidence.  The record in this matter is completely devoid of any evidence by which it could be inferred that the City of Philadelphia has employed a policy, practice, or custom of unconstitutionally refusing to provide identifying employee information for the purpose of stifling civil lawsuits (or for any other purpose, for that matter).  On the contrary, the City's inability to identify the phantom "Johnson" and "Byrne" in this case is entirely a reflection on Plaintiff's mistaken recollection, rather than a product of any unconstitutional municipal policy or custom under *Monell*.

Therefore, Plaintiff's lawsuit against the City must also be dismissed on this basis.

**III.     CONCLUSION**

For all the foregoing reasons, Defendant City of Philadelphia respectfully requests that this Court grant the instant Motion and dismiss Plaintiff's claims pursuant to Rule 41(b) and/or Rule 56 of the Federal Rules of Civil Procedure as set forth herein.

Date:  March 17, 2020                                              Respectfully submitted,

*/s/ Jonathan Cooper*
Jonathan Cooper
Deputy City Solicitor
Pa. Attorney ID No. 316374
Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5448 (phone)
jonathan.cooper@phila.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TARIQ WYATT,** | : |
|             **Plaintiff,** | : |
| | :    **Civil Action** |
|     v. | :    **No. 16-3778** |
| **CITY OF PHILADELPHIA, et al.,** | : |
|             **Defendants.** | : |

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date below, Defendant City of Philadelphia's Motion was filed via the Court's electronic filing system and is available for viewing and downloading. A copy will also be sent via certified mail to the following recipients:[6]

Tariq Wyatt
LA-2506
301 Morea Road
Frackville, PA  17932
*Plaintiff pro se*

Date:  March 17, 2020

Respectfully submitted,

*/s/ Jonathan Cooper*
Jonathan Cooper
Deputy City Solicitor
Pa. Attorney ID No. 316374
Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5448 (phone)
jonathan.cooper@phila.gov

---

[6] As of the date of this filing, the City's offices are substantially shut down as a result of the "coronavirus" pandemic.  The undersigned counsel will make efforts for this Motion to be sent to Plaintiff as soon as practicable.